Shavon T. WALKER, Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

Case No. 15-cv-0055 (CKK/GMH)

United States District Court, District of Columbia.

Signed May 12, 2016

---

Diana Marjorie Savit, Savit & Szymkowicz, LLP, Bethesda, MD, for Plaintiff.

Shermineh C. Jones, Kerslyn D. Featherstone, Office of the Attorney General for the District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION

### G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

On November 16, 2015, this case was referred to the undersigned for resolution of Plaintiff's motion to compel discovery and for other relief [Dkt. 24]. Currently ripe for resolution is Plaintiff's request for $34,640 in legal fees and $17.23 in expenses incurred pursuing her motion to compel discovery [Dkt. 39], which was adjudicated on February 16, 2016. After a thorough review of the parties' briefs and the entire record herein,[1] the Court will grant in part and deny in part Plaintiff's motion for fees and expenses.

## BACKGROUND

Plaintiff Shavon Walker, an African-American teacher and former employee of the District of Columbia Public Schools ("DCPS" or the "District"), began working as a DCPS special education teacher at McKinley Technical Senior High School ("McKinley") in August 2005. Compl. ¶ 7. For the 2012–2013 school year, the District moved Plaintiff from McKinley to Shaw Middle School. Id. ¶ 9. She was terminated on August 8, 2013, because she allegedly violated requirements imposed under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Id. ¶ 20. On December 15, 2014, Plaintiff filed in D.C. Superior Court a complaint alleging discrimination on the basis of race under Title VII, the Rehabilitation Act, and the Americans with Disabilities Act ("ADA"), along with common law claims under the D.C. Whistleblower Protection Act. Id. The complaint arises from the District's alleged disparate treatment in the provision of support and benefits to Plaintiff, and the District's alleged retaliation against Plaintiff's "whistleblowing activities." Id. ¶¶ 14, 29.

Discovery was initially scheduled to close on October 14, 2015. Status Report [Dkt. 13], at 3. However, it was protracted for a number of reasons, including Plaintiff's counsel's health-related issues and the District's counsel's maternity leave and workload. Joint Motion for Extension of Time to Complete Discovery [Dkt. 18] at 2; Mot., Ex. 5. The discovery schedule was thus twice enlarged by the Court. See Minute Order, Aug. 28, 2015 [Dkt. 19].

On May 8, 2015, Plaintiff served her interrogatories and requests for production on the District. Mot. at 1. Though all of its responses were due on June 10, 2015, the District timely served only its objections to Plaintiff's interrogatories and requests for production. It stated in its written objections that it required more time to complete its substantive responses to Plaintiff's discovery. Id. at 1–2; Opp. at 3. On June 19 and 25, 2015, the District served its responses to Plaintiff's requests for production and interrogatories. Mot. at 1–2; Opp. at 3. On July 22, 2015, Plaintiff sent the District a letter challenging the sufficiency of the District's written discovery responses and requesting that the parties discuss her concerns. Mot. at 2; id., Ex. 5.

---

1. The docket entries relevant to this Memorandum Opinion are as follows: (1) Complaint ("Compl.") [Dkt. 1–1]; (2) Plaintiff's Motion for Attorney's Fees and Expenses Related to Her Motion to Compel [Dkt. 39] ("Mot."); (3) Defendant's Opposition to Plaintiff's Motion for Attorney's Fees and Expenses [Dkt. 41] ("Opp."); and (4) Plaintiff's Reply in Support of Her Motion for Attorney's Fees and Expenses Related to Her Motion to Compel [Dkt. 42] ("Reply").

The parties conferred by phone on August 13, 2015. Id. at 2; Opp. at 3. During this call, the parties discussed most, but not all, of Plaintiff's concerns with the sufficiency of the District's discovery responses. Mot., Ex. 6. The parties agreed in principle to the entry of a Protective Order, which District counsel represented it would draft. The parties also agreed that by October 1, 2015, the District would verify some of its other objections, and by October 30, 2015, it would supplement its responses. Further, Plaintiff's counsel agreed to rewrite and narrow two of Plaintiff's interrogatories. Id. at 2–3; id., Ex. 6.

The next day, Plaintiff sent the District those revised interrogatories. When the District failed to supplement its discovery responses by October 30, 2015, Plaintiff filed a motion to compel on November 6, 2015. See Mot. It is undisputed that prior to filing her motion to compel, Plaintiff did not communicate with Chambers or counsel for the District concerning her motion. Reply at 3; Opp. at 8. The District opposed the motion to compel on November 20, 2015. In its opposition, the District represented that it would provide supplemental discovery responses on or around December 4, 2015. E.g., Opp. at 7.

On December 9, 2015, the undersigned heard arguments on Plaintiff's motion to compel. At the hearing, Plaintiff represented that she needed more time to review the "approximately a thousand pages" of documents she had received from the District in its supplemental production on December 4, 2015. Concerned that the District's written discovery responses were not in compliance with the newly amended Federal Rule of Civil Procedure 34,[2] the Court ordered the District to "bring its [discovery] responses into compliance" with that rule. Minute Order, Dec. 10, 2015. The Court further ordered the parties to file a joint notice with the Court "articulating what, if any, issues raised in Plaintiff's Motion ... remain" following the District's supplemental production and Plaintiff's review of the same. Id.

On January 27, 2016, the parties filed a joint notice, representing that disputes re-

lating to Interrogatories 3, and 7–23, and Requests for Production 4, 8–10, 14–15, 18–22, 26–44, and 47–48, were all resolved as a result of the District's supplemental production and amended responses. Jt. Status Report [Dkt. 37]. Five of Plaintiff's interrogatories and nineteen document requests remained in dispute.

The Court held a second hearing on February 16, 2016, to discuss the remaining issues. At that hearing, the parties reached an agreement that all discovery requests were resolved, with the exception of Interrogatories 4–6 and Request for Production 31. Following the hearing, the Court ruled in Plaintiff's favor on the three remaining interrogatories (Plaintiff's Interrogatories 4–6) and one request for production (Plaintiff's Request for Production 31). Order, Feb. 16, 2016. The Court further noted in its order that, once the District provided its amended responses, Plaintiff had agreed that all issues raised in her motion to compel were resolved with the exception of her request for legal fees and costs incurred in bringing the motion. Id.

On February 22, 2016, Plaintiff filed her motion for legal fees and expenses incurred in seeking to compel further responses to her discovery requests. She seeks $34,640 in fees and $17.23 in expenses. Plaintiff's fees motion is now ripe for disposition.

## DISCUSSION

■ Under Federal Rule of Civil Procedure 37(a)(5), if a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion ... to pay the movant's reasonable expenses in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). Under this rule, the Court has the "broad discretion to impose sanctions for discovery violations" and to determine what sanctions, if any, to impose. See Bonds v. Dist. of Columbia, 93

---

2. Contrary to newly amended Rule 34, the District's responses to Plaintiff's document requests did not clearly state whether it was withholding any material based on its objections. See Fed. R. Civ. P. 34(b)(2)(B)–(C).

F.3d 801, 807 (D.C.Cir.1996). However, the Court is not required to order payment of attorney's fees if the Court "finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure of discovery without court action[.]" Fed. R. Civ. P. 37(a)(4)(A).

■ Moreover, prior to filing a motion to compel discovery, Local Civil Rule 7(m) imposes upon the movant a duty to confer with opposing counsel about "the anticipated motion" in a good faith effort to either resolve or narrow the dispute without judicial intervention. L. Civ. R 7(m). Failure to comply with this requirement is grounds for denial of a motion to compel. See, e.g., U.S. ex rel. Pogue v. Diabetes Treatment Ctr. of Am., Inc., 235 F.R.D. 521, 528 (D.D.C.2006) (denying a motion to compel for failure to comply with LCvR 7(m)); Ellipso, Inc. v. Mann, 460 F.Supp.2d 99, 102 (D.D.C.2006) (same).

■ Plaintiff argues that she is entitled to legal fees and expenses incurred in pursuing her motion to compel because it, and the Court's subsequent involvement, caused the District to supplement and amend its discovery responses. Mot. at 2. While it is true that the District produced significant discovery sought by Plaintiff after the motion to compel was filed, the Court will nevertheless curtail Plaintiff's fee request in light of the deficiencies in Plaintiff's own conduct and motion.

As a preliminary matter, Plaintiff failed to comply with Local Civil Rule 7(m), which requires that counsel "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought, and if there is, to narrow the areas of disagreement" before filing the discovery motion. L. Civ. R. 7(m) (emphasis added). This rule serves the crucial function of preventing the unnecessary expenditure of the Court's time and resources on adjudicating a dispute that the parties could have resolved themselves. See Pogue, 235 F.R.D. at 529.

Granted, Plaintiff called the District in August 2015 to discuss various discovery-related disagreements. See Mot., Ex. 5. But based on the parties' representations of this call and

their agreement in principle to a Protective Order that would facilitate continued discovery, the August 13, 2015, call was a preliminary discussion that covered some, but not all, of the discovery issues and outlined the parties' next steps. See generally Mot., Ex. 6. It was not the "last call" discussion Local Rule 7(m) contemplates, where Plaintiff would have alerted the District to the discovery motion she intended to file and attempted to work with the District to resolve the motion or narrow its scope before bringing the Court into the fray. See Ellipso, 460 F.Supp.2d at 102 (finding that the parties failed to comply with Local Rule 7(m) because "there is no indication that opposing counsel notified each other that they were filing these discovery motions, nor is there any hint that they have discussed the motions in person or by phone as required"); see generally Mot., Ex. 6.

Nevertheless, the Court is sympathetic to Plaintiff's complaint that discovery was protracted in this case because of the District's delay. On this score, however, Plaintiff bears responsibility as well as some of the delay was attributable to her counsel's health-related issues. Moreover, Plaintiff's frustration with the District's inaction did not relieve her of her duty to comply with Local Civil Rule 7(m) or the Court's Standing Order, which provides in relevant part that

> If, in what should be the unusual case, the parties are unable to resolve their discovery dispute, counsel shall contact Chambers jointly in order to arrange for a telephone conference with the Court.

Order, Jan. 15, 2015 [Dkt. 3]. Plaintiff did not heed the Court's explicit directive to arrange a conference call with Chambers prior to filing her motion. Like Local Rule 7(m), the Court's Standing Order serves the important function of encouraging litigants to more efficiently resolve discovery disputes before they incur the effort and expense of filing a written discovery motion. Plaintiff contends that she disobeyed this Court's Order because of "past difficulties in getting the District to respond promptly to her requests for informal dispute resolution." See Fee Reply at 3. But the fact that Plaintiff believed "that the government would not be willing to resolve

the problems ... short of this Court's intervention does not change the fact that it was under an obligation to make a good faith effort ... to narrow the areas of disagreement" prior to incurring the expense of filing a written motion to compel. United States v. Sci. Applications Int'l Corp., 555 F.Supp.2d 40, 47 (D.D.C.2008) (internal quotations omitted). The Court will not incentivize such disobedience in the future by compensating Plaintiff now for the fees her counsel incurred in drafting her premature motion.

█ Indeed, failure to make good faith efforts to resolve discovery disputes prior to the filing of a written motion results in "parties unnecessarily rely[ing] on the Court to resolve every discovery dispute instead of working cooperatively to attempt to narrow such disputes." Caudle v. Dist. of Columbia, Civ. Action No. 08–0205 (D.D.C. filed Mar. 23, 2009). That is precisely what occurred here. Most of the discovery disputes at issue were resolved by the agreement of the parties at the December 9, 2015, and February 16, 2016, hearings. The Court essentially supervised as the parties engaged in a colloquy between themselves through the Court on the propriety of the District's production based on the information available to it at that time—a task the parties could have accomplished without the involvement of the Court's time and resources, or at most, during telephone conferences with the Court prior to the filing of any written motion to compel.

In similar cases where movants have overlooked their duties under either the Local Rules or a court's standing order, judges in this Circuit have either denied the motion to compel or ruled on the motion but later denied the movant fees because the motion was filed prematurely. See, e.g., Abbott GmbH & Co. KG v. Yeda Res. & Dev. Co., 576 F.Supp.2d 44, 48 (D.D.C.2008) (denying motion to compel under Local Rule 7(m) where the movant waited until the day of filing to call opposing counsel regarding the motion); Pogue, 235 F.R.D. at 528; Ellipso, 460 F.Supp.2d at 102; Alexander v. FBI, 186 F.R.D. 185, 187 (D.D.C.1999) (denying plaintiffs' motion to compel for failure to comply with the Local Rules and for violating a court

order); Anton v. Prospect Cafe Milano, Inc., 233 F.R.D. 216, 217–18 (D.D.C.2006) ("Because the plaintiff failed to follow the court's direction" in its Standing Order to "contact chambers prior to filing any discovery motion," "the court denied the plaintiff's motion without prejudice."); Boca Investerings P'ship v. United States, No. Civ. A. 97–602PLF/JMF, 1998 WL 647214, at *3 (D.D.C. Sept. 1, 1998), rev'd on other grounds, 314 F.3d 625 (D.C.Cir.2003) (not awarding the movant fees where the Court found that the movant complied with Rule 7(m), but nonetheless disobeyed the Court's "unequivocal command that a party call [ ] chambers for a conference before moving to compel"). Here, the Court opted to adjudicate Plaintiff's motion rather than deny it. The Court will not, however, award Plaintiff her fees and costs spent drafting that written motion because of the "obvious interest in deterring disobedience" of this Court's rules. See Boca Investerings P'ship, 1998 WL 647214, at *3.

That said, the Court believes it would be inequitable to award Plaintiff no fees or costs because the District was more culpable for the delays that precipitated Plaintiff's motion and because the District did not comply with its discovery obligations until after Plaintiff's motion was filed. Plaintiff waited nearly six months for the District to supplement its deficient initial disclosures to bring them into compliance with Rule 26(a)(1)(A). Indeed, the District only supplemented its initial disclosures once the Court ordered it to do so. See Order, Oct. 16, 2015. Similarly, the District took an excessive amount of time—about three months—to produce a first draft of the Protective Order. See Opp., Ex. 1. Following the filing of Plaintiff's motion to compel, the District became noticeably more responsive. In fact, the District did not provide any supplemental discovery until Plaintiff's motion was filed. Mot. at 2; Opp. at 2–3. Nor did the District provide a new version of its discovery responses until after the Court directed it to do so in compliance with Rule 34. Accordingly, the District must also be disincentivized from causing significant discovery delays and from frustrating the efforts of future plaintiffs to resolve discovery disputes without the involvement of the Court. To

deter such conduct, the Court will award Plaintiff her reasonable fees and costs incurred to prepare for and attend the hearings necessary to resolve her motion. It will not, however, award Plaintiff her fees and costs incurred in drafting her premature pleadings associated with her motion or her unsatisfactory efforts to meet and confer with the District prior to the motion's filing.

### 1. Appropriate Fee Award

■ "When requesting attorneys' fees under Rule 37, the moving party bears the burden of proving that the request is reasonable." Davis v. Dist. of Columbia, 304 F.R.D. 51, 63 (D.D.C.2014). A district court has broad discretion in determining an appropriate attorney's fees award. Beck v. Test Masters Educ. Servs., Inc., 289 F.R.D. 374, 382 (D.D.C.2013). To arrive at a final award, courts employ the "lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended." Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 248 F.R.D. 64, 68 (D.D.C.2008).

### a. Reasonable Rate

■ Reasonable rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Covington v. Dist. of Columbia, 57 F.3d 1101, 1109 (D.C.Cir.1995) (internal quotation marks omitted). In the recent Eley decision, the D.C. Circuit observed that determining a prevailing market rate is "inherently difficult," but nevertheless emphasized the "importance of fixing the prevailing hourly rate in each case with a fair degree of accuracy." Eley v. Dist. of Columbia, 793 F.3d 97, 100 (D.C.Cir.2015) (internal quotations omitted). To meet its burden to show that the requested rate is reasonable, a party must " 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' " Id. (quoting Blum v. Stenson,

465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

One type of additional evidence permitted in this Circuit is attorney's fee matrices, such as the Laffey Matrix prepared by the Civil Division of the United States Attorney's Office for the District of Columbia ("USAO Laffey Matrix").[3] See Beck, 289 F.R.D. at 383; United States v. Dynamic Visions Inc., 307 F.R.D. 299, 303 (D.D.C.2015); Tequila Centinela, 248 F.R.D. at 68. The USAO Laffey Matrix was created to demonstrate the "prevailing rates in the community for lawyers of comparable skill, expertise and reputation in complex federal litigation." Laffey v. Nw. Airlines, Inc., 572 F.Supp. 354, 371–72 (D.D.C.1984).

The Court of Appeals has since clarified in Salazar that a party may face a lower burden to justify the application of Laffey rates unless their opponent identifies "a submarket in which attorneys' hourly fees are generally lower than the rates in ... the Laffey Matrices." Salazar ex rel. Salazar v. Dist. of Columbia, 809 F.3d 58, 64 (D.C.Cir.2015). In that case, because the party opposing the fee award did not identify such a submarket, the D.C. Circuit concluded that it had "acquiesce[ed] in the notion that the litigation at issue qualifies as complex federal litigation (as to which the Laffey Matrices apply)." Id. Although the dispute there was over two species of the Laffey Matrix—the USAO version and the "LSI" version (which has higher rates)—the holding in Salazar puts at least some of the onus on the fee opponent to challenge Plaintiff's claimed rates. See id.

■ Here, Plaintiff's counsel does not seek the Laffey rate for her services, but rather her current, usual billing rate, which is less than the Laffey rate. Mot. at 4. Plaintiff's counsel avers that she has at least thirty-nine years of experience. That equates to a USAO Laffey rate of $568 per hour. Plaintiff's counsel seeks only $425 per hour for her services in this matter. Mot., Ex. A ¶ 4. Similarly, she seeks the usual billing rate for her junior associate, Ms. Dari Pogach, which is $275 per hour, nearly $100 less than

---

**3.** Laffey rates from June 1, 2015, to May 31, 2016, can be found at https://www.justice.gov/

usaodc/file/796471/download.

her comparable Laffey rate. Id. ¶ 15. For paralegal work, Plaintiff seeks $140 per hour, which is $14 less than the USAO Laffey rate. Id. ¶ 12. The Court finds that Plaintiff's requested rates are reasonable. Plaintiff has provided sufficient information regarding her counsels' education, experience, and background to justify the rates she seeks for her counsel and paralegal. Further, Defendant neither challenges the application of Plaintiff's current, customary billing rates nor argues for lower rates, presumably because Plaintiff already seeks rates lower than Laffey. See generally Opp.; see also Williams v. Marriott Corp., 669 F.Supp. 2, 4 (D.D.C.1987) (finding that plaintiff's customary rate was reasonable where plaintiff filed an affidavit explaining his customary hourly rate, which defendant did not challenge). Thus, the Court will apply Plaintiff counsel's customary rates in the lodestar equation to determine a reasonable fee award.[4]

### b. Reasonable Hours

To support the reasonableness of the hours for which a party seeks reimbursement, the party must "maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Weisberg v. Webster, 749 F.2d 864, 873 (D.C.Cir.1984) (quotation omitted). In other words, the party must submit "a log of the hours for which they request compensation, supported by a sworn declaration from the supervising attorney." Beck, 289 F.R.D. at 384. The attorney's declaration should describe the work performed and "the process by which the records were produced." Id. This is especially important for fee awards under Rule 37, since "the causal connection between defendants' violations of Rule 37 and reasonable expenses incurred by plaintiff [is] not to be taken lightly." Cobell v. Norton, 231 F.Supp.2d 295, 303 (D.D.C.2002) (internal citations omitted). Rather a "near 'but for' relationship must exist between the Rule 37 violation and the activity for which

fees and expenses are awarded." Cobell v. Babbitt, 188 F.R.D. 122, 127 (D.D.C.1999) (citation omitted). Courts, utilizing their broad discretion under Rule 37, may make an independent assessment of whether the hours claimed are justified. Beck, 289 F.R.D. at 384.

Here, the time entries for Plaintiff's counsel contain sufficiently detailed descriptions of the work performed. But, as previously indicated, not all hours for which Plaintiff seeks compensation will be awarded in light of her noncompliance with Local Rule 7(m) and the Court's Standing Order. Plaintiff cites Woodland v. Viacom to argue that all useful work undertaken in an effort to meet and confer as required by this Court's rules prior to the filing of a motion to compel is compensable. 255 F.R.D. 278, 283–84 (D.D.C. 2008); see Mot. at 3. In Woodland, however, the district judge awarded fees for the defendant's pre-filing efforts because they were " 'useful and of a type ordinarily necessary' to properly file the motion to compel." Id. (emphasis added). That is, unlike Plaintiff here, the defendant in Woodland filed its motion to compel in compliance with the operative rules. See id. Here, because Plaintiff's pre-filing efforts were insufficient and her motion to compel was filed prematurely, Woodland is inapposite. Cf. 255 F.R.D. at 283–84. The Court will not award fees associated with either the motion or Plaintiff's inadequate pre-filing efforts to resolve her discovery dispute with the District. The Court will, however, award her fees incurred to resolve the discovery dispute consistent with this Court's Standing Order— namely, Plaintiff's phone call with chambers on November 16, 2015, her preparation for and appearance at the two hearings before the undersigned, and time spent collaborating with the District to prepare a joint status report identifying the remaining discovery disputes, as ordered by the Court.

The Court will further reduce Plaintiff's claimed hours sua sponte because they in-

---

4. Plaintiff requests fees at her current billing rate, not the rate applicable at the time the fees were incurred. The District does not challenge her request for current rates. In any event, Plaintiff's request for her current rates is consistent with the case law. See, e.g., West v. Potter, 717

F.3d 1030, 1034 (D.C.Cir.2013) ("If compensation for delay is necessary to provide a reasonable fee, it may be made ... by basing the award on current rates[.]") (internal quotations omitted).

clude some non-compensable time. The Court will not compensate Plaintiff for her counsel's hours spent reviewing the Court's Order and the District's filings; strategizing with colleagues on the discovery dispute; reading and reviewing the District's discovery responses and production, and other such activities that would have been conducted in the ordinary course of litigation. Because counsel would have been under an obligation to perform these activities notwithstanding Defendant's failure to comply with its discovery obligations, Tequila Centinela, 248 F.R.D. at 69, Defendant's failure was not a "near but-for" cause of that time expenditure, Cobell, 188 F.R.D. at 127. Likewise, the Court will not compensate counsel for 0.30 hours spent on "client management," i.e., general communications with her client. Again, these are activities counsel must perform regardless of Defendant's wrongdoing,

and thus they fall short of the "near but for" standard. See Tequila Centinela, 248 F.R.D. at 69–70 (declining to award fees for document review, strategy, settlement discussions, client management and/or communications, and discovery deposition preparation because they constitute "ordinary and necessary litigation activities" that do not directly arise from Defendant's Rule 37 violations).

The following chart includes all time entries deducted from Plaintiff's fee award, either because they pertain to the aborted meet and confer efforts last summer, to the drafting of the pleadings in support of the motion to compel that Plaintiff prematurely filed last fall, or to ordinary and necessary litigation activities that did not directly arise from the District's failure to comply with its discovery obligations:

| Date | Lawyers/Paralegal | Hours | Explanation |
|------|------------------|-------|-------------|
| 6/30/2015 | DMS | 0.30 | Meeting with DYP re: District's discovery responses, inappropriate objections, plan to address same |
| 6/30/2015 | DYP | 3.00 | Review District's discovery responses |
| 7/2/2015 | DMS | 0.30 | Meeting with DYP re: validity of DC's various objections to written discovery, appropriate actions to take in response |
| 7/2/2015 | DYP | 3.25 | Finish reviewing District's discovery responses |
| 7/6/2015 | DYP | 3.50 | Research appropriateness of various District discovery objections & avoidances; begin drafting letter to request complete responses. |
| 7/7/2015 | DMS | 0.20 | Meeting with DYP re: appropriate responses to various discovery objections raised by DC |
| 7/8/2015 | DYP | 4.00 | Finish first draft of letter to [District's counsel] re: inadequate discovery responses. |
| 7/8/2015 | DMS | 1.20 | Legal research case in support of position that DC's discovery responses are inadequate |
| 7/21/2015 | DMS | 0.80 | Continue reading cases re: various objections raised by D.C. in responding to written discovery requests |
| 7/21/2015 | DMS | 4.50 | Continue editing letter to [District's counsel] re: discovery issues. |
| 7/22/2015 | DMS | 1.50 | Final edits to letter to [District's counsel] scheduling and discovery issues |
| 8/13/2015 | DMS | 0.60 | Phone call w/ [District counsel] to discuss discovery and scheduling issues |
| 8/13/2015 | DMS | 2.30 | Letter to [District counsel] to confirm 8/13 discussion re: discovery & scheduling, and to raise other issues |

| Date | Biller | Hours | Description |
|---|---|---|---|
| 11/4/2015–11/6/2015 | DMS/paralegal | 9.50 | Draft, edit, and file motion to compel and proposed order |
| 11/6/2015 | DMS | 0.20 | Email [District counsel] re: discovery motions |
| 11/6/2015 | DMS | 0.10 | Review D.C.'s notice to court re: Plaintiff's motion to compel discovery |
| 11/11/2015 | DMS | 0.50 | Prepare response to D.C.'s notice of filing re: Plaintiff's motion to compel |
| 11/11/2015 | Paralegal | 0.10 | Electronically file response to D.C.'s notice re: motion to compel discovery |
| 11/16/2015 | DMS | 0.20 | Meeting with RCE to discuss D.C.'s arguments in opposition to motion to compel, appropriate points to make in reply |
| 11/24/2015–11/30/2015 | DMS/paralegal | 17.90 | Legal research for reply; draft, edit, and file reply |
| 11/25/2015 | DMS | 0.20 | Meeting with RCE re: relevance issues raised by DC in opposing motion to compel |
| 11/30/2015 | DMS | 0.30 | Email contacts with Plaintiff – forwarded DC's opposition to motion to compel, and updated on next steps |
| 12/2/2015 | DMS | 0.30 | Review order scheduling hearing on motion to compel; notify Plaintiff of the same |
| 1/27/2016 | DMS | 0.60 | Review documents produced by D.C. in response to notice that original production was incomplete; email [District counsel] to advise that most document issues now resolved. |
| 2/4/2016 | DMS | 0.20 | Review D.C.'s notice of filing amended supplemental discovery responses; brief review of filed documents |
| | **TOTAL:** | **55.55** | |

Mot., Ex. A3; Reply, Ex. B.

Accordingly, the Court will subtract 55.55 hours from the total of 86.70 hours submitted with Plaintiff's fee request. That leaves a total of 31.15 compensable hours, all of which were incurred by Plaintiff's senior counsel. Multiplying 31.15 hours by the senior counsel's rate of of $425 per hour equates to a total fee award of $13,238.75.

Further, Plaintiff's counsel incurred $17.23 in travel costs and costs for photocopying and mailing discovery-related letters to the District. See Pl. Mot. at 9. The District makes no specific objection to paying these costs. See generally Opp. Accordingly, the Court directs that Plaintiff's legal costs shall be paid in full.

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Expenses [Dkt. 39] is **GRANTED IN PART** and **DENIED IN PART.**

An appropriate Order will accompany this Memorandum Opinion.